CLARENCE E. McMANUS, Judge.
 

 1
 
 STATEMENT OF THE CASE
 

 Deborah and Michael Tate were married on January 26,1980. Deborah filed a petition for divorce on June 8, 1993. She then filed motion to partition community property on April 26, 1999 and a descriptive list of assets and liabilities on October 27, 1999 listing assets of a community home in Ken-ner and a piece of vacant land in Mississippi. The property values were listed as unknown. The mortgage on the community home was listed as a liability and Deborah claimed reimbursement claims for household bills she had paid.
 

 Michael filed a descriptive list on December 13, 1999 listing the same immov-ables as assets with unknown values. He also listed assets of furnishings in the community home and the proceeds from the sale of timber on the Mississippi property. Michael listed tax bills on the Mississippi property and unknown amounts paid to the tax assessor, as well as the mortgage on the community home, as liabilities.
 

 On March 23, 2009, the hearing officer recommended that a proposed consent judgment submitted with a motion to enforce consent judgment be made a judgment of partition in accordance with the transcript of July 17, 2000 |,proceedings. The proposed consent judgment had been dictated in open court on July 17, 2000.
 

 Michael filed an objection to the hearing officer’s recommendation on March 23, 2009 arguing there was never a consent judgment signed by either party. A hear
 
 *1001
 
 ing on the objection was held April 20, 2009 and the trial court issued a judgment on May 1, 2009 adopting the consent judgment dictated into the record July 17, 2000. That consent judgment provided that Michael transfer and convey his undivided one-half interest in the immovable property in Kenner with the community house, and the immovable property in Mississippi to Deborah in full ownership. Therefore, Michael was to transfer and convey the entirety of his interests in all immovable property to Deborah. Michael’s retirement pension benefits in his name were to be assigned according to the “Sims formula”, which was to go into effect on the date of divorce and the length of time that the benefits had accrued would be determined. Any pension benefits accrued after the date of divorce would be Michael’s separate property. The consent judgment further provided that Deborah waived all rights she may have had under a retirement savings investment portion plan in Michael’s name. Finally, Deborah was to indemnify Michael for any of the loan amount on the listed properties and was to hold Michael harmless for payment on the loan.
 

 At the April 20, 2009 hearing before the trial court, Michael argued that even though he was present at the hearing in 2000, he stated to the trial court that he did not understand what was going on, especially related to the community property at issue. The trial court asked if he understood and he responded “[y]eah. I understand but there are certain things that I don’t understand.” Michael argued there was no meeting of the minds and, although there was some discussion before |4the court, there was some confusion regarding him agreeing to reimburse Deborah or turn over the land to her. Michael then left court without signing anything.
 

 Deborah argued there was some confusion at the hearing, however, both attorneys and the court explained the law of reimbursement and in the end Michael understood the transfer of the land to Deborah and then asked questions regarding the retirement account.
 

 Following the hearing, the trial court adopted the consent judgment. Michael now appeals the trial court’s judgment granting the motion to make the consent judgment the formal judgment of the court. For the following reasons, we affirm the trial court’s judgment.
 

 DISCUSSION
 

 First, we find there was a valid consent judgment placed on the record between the parties on July 17, 2000. On that date, both Michael and Deborah were present in court and both were represented by counsel. Deborah’s counsel stated that they were set for trial but had reached an agreement or consent judgment. Both attorneys stated the terms of the consent judgment. Both parties were then asked if they understood what was put into the record by the attorneys. Michael then stated “Yeah. I understand but there are certain things that I don’t understand.” He stated he had talked it over with his attorney but did not understand about the land and house. Michael then explained that he had paid on the land every year except one and had paid on the house until 1993. So, he asked why Deborah deserved to get the land.
 

 The trial court explained to Michael that Deborah would receive the land and house for reimbursements he owed to her for her payment of community debts. Michael’s attorney also explained to him that the reimbursements were for Deborah’s payments of the mortgage and household bills. Michael again stated he |sdid not understand. Deborah’s attorney went on to provide a financial explanation stating the appraisal value of the house, the balance of
 
 *1002
 
 the loan, and the reimbursement due to Deborah. She then explained that half of the value of the house was $14,464.14 for each party and one half of the reimbursements due to Deborah equal $14,620.00. Therefore, Michael’s one half of the house value is almost even with the reimbursements due to Deborah. The trial court further explained why Michael owed the reimbursements to Deborah.
 

 Michael asked why the land was included since he had paid on it. The trial court explained that Michael owed the money and it had to be paid from somewhere, so the value in the Mississippi land made up the difference. The trial court went on to offer a hypothetical of Michael having a savings account that had nothing to do with the mortgage. The trial court stated that even in that instance, it would order Michael to pay Deborah the reimbursements out of the savings account, even if it had nothing to do with the marriage.
 

 Michael asked no further questions regarding the reimbursement or transfer of the land. He did ask one question regarding the retirement plan. His attorney and the court explained that only the portion accrued during the marriage would be divided and anything accrued after would be his separate property. The court then asked one final time if everyone understood. There were no direct responses from the parties and the court instructed the attorneys to draw up the papers.
 

 We find it is clear from this transcript that the court and attorneys fully explained the terms of the consent judgment to Michael. He did have questions regarding why the Mississippi land was being included to pay the reimbursements to Deborah. However, once he received extensive explanations from the court and attorneys, he did not offer any further objection to the consent judgment. The consent judgment appears to have been fully discussed between the attorneys and | f,parties prior to the court hearing. And, the court had a chance to review the consent judgment and hear from each party. After all explanations were offered, the court accepted the consent judgment and asked the attorneys to present a written judgment.
 

 La. C.C. art. 3072 provides that “[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.” In this case, the consent judgment or compromise was not perfected in writing, however, it was recited in open court and there was a full discussion on the record.
 

 Therefore, we find the trial court found there to be a valid consent judgment on that date. Since the trial court found there to be a valid consent judgment at the hearing in open court in 2000, we also find the trial court correctly granted the motion to enforce the consent judgment in 2009.
 

 AFFIRMED.